IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

TAMERA TERWILLIGER,

       Plaintiff,

v.                                     CASE NO. 1:12-cv-129-MP-GRJ

CAROLYN W. COLVIN,[1]
Acting Commissioner of Social Security,

       Defendant.

_____/

## REPORT AND RECOMMENDATION

Plaintiff appeals from a final decision of the Commissioner of Social Security

("the Commissioner") denying her applications for disability insurance benefits (DIB)

and Supplemental Security Income (SSI) benefits. (Doc. 1.)  The Commissioner has

answered, and both parties have filed briefs outlining their respective positions.  (Docs.

7, 12, & 13.)   For the reasons discussed below, the undersigned recommends that the

Commissioner's decision be **AFFIRMED**.

## I.  PROCEDURAL HISTORY

Plaintiff filed an application for disability benefits on June 16, 2009, alleging a

disability onset date of June 16, 2009, due to rheumatoid arthritis, osteoarthritis,

osteoporosis, cardiovascular disease, hypertension, and high cholesterol.  Plaintiff's

date last insured was September 30, 2009.  After denials at the initial application and

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013.
Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted
for Michael J. Astrue as the defendant in this case.

reconsideration stages, Plaintiff petitioned for a hearing before an Administrative Law

Judge (ALJ), who conducted a hearing on October 4, 2010. (R. 58-63, 31-47.) The

ALJ entered an unfavorable decision on November 5, 2010. (R. 14-26.) The Appeals

Council denied Plaintiff's request for review, thus making the decision of the ALJ the

final decision of the Commissioner. (R. 1-7.) This action followed.

## II. STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial

evidence.[2] Substantial evidence is more than a scintilla, i.e., the evidence must do more

than merely create a suspicion of the existence of a fact, and must include such

relevant evidence as a reasonable person would accept as adequate to support the

conclusion.[3]

Where the Commissioner's decision is supported by substantial evidence, the

district court will affirm, even if the reviewer would have reached a contrary result as

finder of fact, and even if the reviewer finds that the evidence preponderates against

the Commissioner's decision.[4] The district court must view the evidence as a whole,

taking into account evidence favorable as well as unfavorable to the decision.[5]

---

[2] *See* 42 U.S.C. § 405(g) (2000).

[3] Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982) and Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971)); *accord,* Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

[4] Edwards, 937 F.2d at 584 n.3; Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).

[5] Foote, 67 F.3d at 1560; *accord,* Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (holding that the court must scrutinize the entire record to determine reasonableness of factual findings); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (finding that the court also must consider evidence detracting from evidence on which the Commissioner relied).

However, the district court will reverse the Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law.[6]

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death, or has lasted or can be expected to last for a continuous period of not less than twelve months.[7] The impairment must be severe, making Plaintiff unable to do his previous work, or any other substantial gainful activity which exists in the national economy.[8]

The ALJ must follow five steps in evaluating a claim of disability.[9] First, if a claimant is working at a substantial gainful activity, he is not disabled.[10] Second, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, then he does not have a severe impairment and is not disabled.[11] Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is

---

[6] Keeton v. Dep't Health and Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994).

[7] 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505 (2005) (All further references to 20 C.F.R. will be to the 2005 version unless otherwise specified.).

[8] 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

[9] 20 C.F.R. §§ 404.1520, 416.920. The claimant has the burden of proving the existence of a disability as defined by the Social Security Act. Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991).

[10] 20 C.F.R. § 404.1520(b).

[11] 20 C.F.R. § 404.1520(c).

disabled.[12]  Fourth, if a claimant's impairments do not prevent him from doing past relevant work, he is not disabled.[13]  Fifth, if a claimant's impairments (considering his residual functional capacity ("RFC"), age, education, and past work) prevent him from doing other work that exists in the national economy, then he is disabled.[14]

The burden of proof regarding the plaintiff's inability to perform past relevant work initially lies with the plaintiff.[15]  The burden then temporarily shifts to the Commissioner to demonstrate that "other work" which the claimant can perform currently exists in the national economy.[16]  The Commissioner may satisfy this burden by pointing to the Medical-Vocational Guidelines (the "Grids") for a conclusive determination that a claimant is disabled or not disabled.[17]

However, the ALJ should not exclusively rely on the Grids when "the claimant has a non-exertional impairment which significantly limits his or her basic work skills or

---

[12] 20 C.F.R. § 404.1520(d).

[13] 20 C.F.R. § 404.1520(e).

[14] 20 C.F.R. § 404.1520(f).

[15] Walker v. Bowen, 826 F.2d 996, 1002 (11th Cir. 1987); *see also* Doughty v. Apfel, 245 F. 3d 1274, 1278 (11th Cir. 2001).

[16] Doughty, 245 F.3d at 1278 n.2. In Doughty the court explained this burden shifting as follows:

In practice, the burden temporarily shifts at step five to the Commissioner. The Commissioner must produce evidence that there is other work available in significant numbers in the national economy that the claimant has the capacity to perform.  In order to be considered disabled, the claimant must then prove that he is unable to perform the jobs that the Commissioner lists. The temporary shifting of the burden to the Commissioner was initiated by the courts, and is not specifically provided for in the statutes or regulations.) (Internal citations omitted).

[17] Walker, 826 F.2d at 1002 ("[T]he grids may come into play once the burden has shifted to the Commissioner to show that the claimant can perform other work.").

when the claimant cannot perform a full range of employment at the appropriate level of exertion."[18]   In a situation where both exertional and non-exertional impairments are found, the ALJ is obligated to make specific findings as to whether they preclude a wide range of employment.[19]

The ALJ may use the Grids as a framework to evaluate vocational factors so long as he introduces independent evidence of the existence of jobs in the national economy that the claimant can perform.[20]   Such independent evidence may be introduced by a Vocational Expert's ("VE") testimony, but this is not the exclusive means of introducing such evidence.[21]   Only after the Commissioner meets this burden does the burden shift back to the claimant to show that he or she is not capable of performing the "other work" as set forth by the Commissioner.

## III.  <u>SUMMARY OF THE RECORD</u>

### A. <u>Plaintiff's Medical Records</u>

#### 1. <u>Treating Physicians</u>

Dr. Joseph Crumbliss, a family physician, was Plaintiff's treating physician from July 2008 to 2010.  At Plaintiff's first visit in July 2008, Dr. Crumbliss referred her to Dr. Darush Rahmani, a rheumatologist, to determine if Plaintiff had rheumatoid arthritis

---

[18] <u>Wolfe v. Chater</u>, 86 F.3d 1072, 1077 (11th Cir. 1996). *See* <u>Jones v. Apfel</u>, 190 F.3d 1224, 1229 (11th Cir. 1999); <u>Walker</u>, 826 F.2d at 1003 ("The grids may be used only when each variable on the appropriate grid accurately describes the claimant's situation.").

[19] <u>Walker</u>, 826 F.2d at 1003.

[20] <u>Wolfe</u>, 86 F.3d at 1077-78.

[21] *See id.*

because of her complaints of knee and back pain.

Dr. Rahmani examined Plaintiff on August 13, 2008. Dr. Rahmani found that Plaintiff had ligamentous laxity and swan-neck deformities in her hands, but that she was otherwise normal in her musculoskeletal presentation and walked with a normal gait. (R. 220.) Dr. Rahmani opined that Plaintiff did not have active rheumatoid arthritis, but that she had an undifferentiated connective tissue disease. During a follow-up visit In August 2008, Dr. Crumbliss noted that in an examination of Plaintiff's knees, both the left and right knee were "unremarkable." (R. 267.)

On January 14, 2009, Plaintiff was examined by Dr. Jason Taylor, a second rheumatologist referred by Dr. Crumbliss. Dr. Taylor found bony hypertrophy in Plaintiff's hands, and 20 degrees of flexion and extension in Plaintiff's left wrist. He also found mild tenderness in Plaintiff's right hip. (R. 222-23.) Dr. Taylor diagnosed Plaintiff with osteoporosis, polyarthralgias, and right trochanteric bursitis. He recommended that she take additional medications for the osteoporosis, recommended that she continue with her current medications for her arthritis symptoms as they appeared to be effective, and recommended that if she had additional hip pain, she should consider a trochanteric bursa injection. The following month, Plaintiff complained of right elbow and right hip pain. Dr. Taylor found the right elbow tender, but otherwise "unremarkable," and found that Plaintiff had a full range of motion in both hips with some tenderness in the right hip. (R. 224.) Dr. Taylor gave Plaintiff an injection in her right hip, and suggested that Plaintiff take Darvocet or Tylenol, noting that Plaintiff did not appear to have symptoms of inflammatory arthritis.

In February 2009, Plaintiff returned to Dr. Crumbliss for follow-up.  He opined that she might have seronegative rheumatoid arthritis, and prescribed Plaquenil.  (R. 263.)  In April 2009, Dr. Crumbliss noted that Plaintiff was "doing quite a bit better with her joints," and that she was able to lift weights at the gym four or five times per week. (R. 262.)  In follow-up visits in May and June 2009, Dr. Crumbliss found that Plaintiff's arthritis was under fair control with ongoing medication.

In June 2009, Plaintiff was treated by Dr. Taylor.  Plaintiff stated that while the bursa injection and pain medication had given her some relief, she still had pain in her lower back and right hip.  Dr. Taylor noted that while Plaintiff's right hip was tender, she still had 90 degrees flexion, 15 degrees internal rotation, and 30 degrees external rotation.  Dr. Taylor ordered an x-ray of Plaintiff's right hip to determine the cause of her symptoms, which had a normal result.  (R. 248, 250.)  On August 17, 2009, Dr. Taylor opined that Plaintiff was "being treated appropriately" for osteoarthritis, osteoporosis, hypertension, and hyperlipidemia, but stated that he did not have the qualifications to complete the questionnaire apparently provided to him by Plaintiff's attorney.  (R. 319.) Dr. Taylor opined that Plaintiff could perform a "clerical job."  *Id.*

On September 2, 2009, Plaintiff had an MRI of her spine which showed a herniated disc at L4-L5.  (R. 408-09.)  Dr. Crumbliss found that she had "some symptoms going down her leg," which "seem[] to be worse on the left," but his treatment notes do not indicate further detail regarding the symptoms.  (R. 352.)

## 2.  Treatment After September 30, 2009

In October 2009, following Plaintiff's date last insured, Dr. Taylor reviewed the MRI of Plaintiff's spine that indicated the protruding disc at L4-L5.  Plaintiff complained of right hip pain.  Dr. Taylor noted that although Plaintiff had some weakness in her left hip flexors, she had "little in terms of left-sided symptoms to go along with her MRI findings."  (R. 380.)  Dr. Taylor suggested that Plaintiff pursue physical therapy or consider a trial of Neurontin.

Plaintiff also continued to see Dr. Crumbliss following the September 30, 2009 date last insured.  On March 3, 2010, Plaintiff complained of back and leg pain, and stated that she was receiving injections for pain from Dr. Heath.  (R. 415.)  By March 31, 2010, Dr. Crumbliss found that Plaintiff was doing "substantially well" following the series of injections and an increase in medication.  (R. 414.)

From November 9, 2009 to August 23, 2010, Plaintiff was treated by Dr. Heath, a pain management specialist.  During this time, Dr. Heath treated Plaintiff with injections in her lumbar spine and hip.  In September 2010, almost a year after her date last insured, Plaintiff saw Dr. Steven Brown, a neurosurgeon.  Dr. Brown performed surgery on Plaintiff's lower back that included a laminotomy, facetectomy, and discectomy.

## 3.  Consultative Examining Physicians

On November 9, 2009, Plaintiff was examined by Dr. Edward Brandecker.  Dr. Brandecker found that Plaintiff had a full range of motion in her hands, with mild enlargement of the interphalangeal joints.  (R. 395.)  Dr. Brandecker noted some

limitations in Plaintiff's lumbar range of motion, but normal range of motion in her hips and knees. He also found that she had a normal gait, could walk on her heels and toes, and could squat, tandem gait, and hop. *Id.* Dr. Brandecker opined that Plaintiff had "no limitation with her mobility skills," "no impairment of ambulation," and "no reflex asymmetry." (R. 396.)

On December 17, 2011, Dr. Donald Goldman examined Plaintiff and prepared a letter and questionnaire. Dr. Goldman opined that Plaintiff had failed back syndrome, due in part to issues arising from her back surgery. He further opined that Plaintiff was restricted in standing, balancing, walking, twisting, lifting, pushing, pulling, and bending. (R. 587.) Dr. Goldman stated, in a Multiple Impairment Questionnaire, that his descriptions of Plaintiff's symptoms would apply as far back as July 2008. (R. 582.)

### 4. <u>Consultative Non-Examining Physicians</u>

Dr. Jimmy Breazeale completed a Physical Residual Functional Capacity Assessment form on July 23, 2009. (R. 251-58.) Dr. Breazeale opined that Plaintiff could frequently lift 10 pounds and occasionally lift 20 pounds, could stand or walk for six hours and sit for six hours in an eight-hour workday, and could engage in unlimited pushing and pulling. He further opined that Plaintiff was limited to occasional climbing of ramps and stairs, could never climb a ladder, rope, or scaffolds, and was limited to occasional balancing, stooping, kneeling, crouching, and crawling. Dr. Breazeale opined that Plaintiff could engage in unlimited reaching, fingering, and feeling, but was limited to frequent handling due to bony hypertrophy and degenerative changes in her hands. Dr. Breazeale found no visual, communicative, or environmental limitations.

Dr. Terry Collier completed a Physical RFC Assessment on November 24, 2009. (R. 397-404.)  Dr. Collier opined that Plaintiff could frequently lift 10 pounds and occasionally lift 20 pounds, could stand or walk for six hours and sit for six hours in an eight-hour workday, and could engage in unlimited pushing and pulling.  Dr. Collier found no postural, manipulative, visual, communicative, or environmental limitations. He acknowledged that his findings were contrary to medical source statements in Plaintiff's file, and referenced Dr. Brandecker's consultative examination of November 9, 2009.  He did not, however, state with specificity how his findings differed from those of Dr. Brandecker or other medical source statements.  Dr. Collier opined that Plaintiff's allegations were not fully supported by the medical records, and that the records were insufficient to support a finding of disability with a date last insured of September 30, 2009.  (R. 404.)

## B.  Summary of Hearing Testimony

At the hearing, Plaintiff testified that she was thirty-nine years old and had a ninth grade education.  She stopped working in August 2006 due to back pain.  Plaintiff testified that she watches TV, lays down, takes a nap, and does some household chores when her son is at school, and that she is able to drive to pick her son up.  She testified that her husband and son assist her with household tasks.  Plaintiff testified that she had surgery on her back approximately one month before the hearing.  She stated that she had pain in her back, in her hip, and in her hands.

Dr. Ollie Raulston, a state agency physician, who had reviewed Plaintiff's medical records, testified that until the time of Plaintiff's surgery, he believed that she

was capable of sedentary work, standing and walking four hours of an eight-hour workday and sitting down six hours of an eight-hour workday, with the ability to change positions hourly. Dr. Raulston testified that he would limit Plaintiff to lifting 10 pounds frequently, 20 pounds occasionally, and would limit Plaintiff to occasional grasping and twisting. He also testified that Plaintiff would be limited to frequent handling, feeling, and fingering bilaterally, and frequent overhead reaching, and should not be exposed to hazardous duties, nor extreme cold or industrial vibration. In response to questioning from Plaintiff's attorney, Dr. Raulston stated, it was his "best guess" that Plaintiff was experiencing "moderate to severe" pain, and that such pain could interfere with concentration. (R. 41.) He further testified that it was possible that an individual with Plaintiff's pain would need to lie down during the day.

The ALJ posed questions to Michael Driscoll, the vocational expert. The VE testified that a younger individual with limited education who could perform sedentary work but needed to occasionally switch positions from sitting to standing could perform Plaintiff's past relevant work as an accounts receivable clerk and a customer service clerk. The ALJ stated that this hypothetical assumed that the "individual's going to be able to be alert and on task throughout the workday." (R. 44.) Plaintiff's representative asked the VE if an individual who could sit for two hours of an eight-hour workday, stand or walk for one hour, could occasionally lift and carry up to 10 pounds, and could rarely grasp, twist, turn, engage in fine manipulation of the hands, or reach, could perform Plaintiff's past relevant work. The VE testified that such an individual could not perform Plaintiff's past relevant work or any other work.

## C. Findings of the ALJ

The ALJ found that the Plaintiff had the following severe impairments: osteoarthritis, osteoporosis, right trochanteric bursitis, and degenerative disc disease. The ALJ found that Plaintiff's hypertension, high cholesterol, and positive anti-CPP antibodies were non-severe impairments. The ALJ found that Plaintiff's severe impairments did not meet or equal the listings. The ALJ determined that Plaintiff had the residual functional capacity to perform sedentary work, except that Plaintiff required the freedom to occasionally change position from sitting to standing. The ALJ found that Plaintiff could perform sedentary work on a sustained basis, for 40 hours per week, for an indefinite amount of time.

The Plaintiff had prior work experience as an accounts receivable clerk and a customer service clerk. The ALJ found that Plaintiff was able to perform her past relevant work as it was generally performed. In making this finding, the ALJ relied upon the testimony of a vocational expert. The VE testified that Plaintiff's past relevant work was sedentary, and that an individual with Plaintiff's RFC could perform her past relevant work, assuming that she would be alert and on task throughout the workday.

## IV. DISCUSSION

Plaintiff contends that the ALJ's determination should be reversed because the ALJ made errors in her assessment of the opinion of Plaintiff's treating physician, because the ALJ failed to provide a specific rationale for rejecting Plaintiff's testimony as not credible, because the ALJ presented a flawed hypothetical to the VE, and because the Appeals Council had failed to consider new and material evidence. (Doc.

12.) For the reasons discussed below, the Court finds that there was substantial evidence supporting the ALJ's decision. Accordingly, the decision of the Commissioner should be affirmed.

## A. Opinion of Treating Physician Dr. Crumbliss

Plaintiff contends ALJ Helsper erred in addressing the medical opinions expressed by Plaintiff's treating physician Dr. Crumbliss. Plaintiff argues that the ALJ should have given controlling weight to Dr. Crumbliss's opinion and failed to consider factors set forth in the Commissioner's regulations in evaluating the opinion. The opinions at issue are letters written by Dr. Crumbliss in February 2009 and August 2009, stating that he believed that Plaintiff was disabled due to her ailments and could not work, as well as an attorney-supplied Multiple Impairment Questionnaire completed by Dr. Crumbliss in April 2010. In the Questionnaire, Dr. Crumbliss opined that Plaintiff could sit one to two hours total and stand up to one hour total in an eight-hour workday. He opined that Plaintiff was limited in grasping, turning, and twisting objects, reaching, and performing fine manipulations, and that her pain and fatigue frequently would interfere with her attention and concentration. (R. 422-25.) The ALJ assigned little weight to these opinions, stating:

> In evaluating Dr. Crumbliss's opinions, I have considered the length, nature, and extent of the treating relationship, the frequency of examinations, the supportability by other evidence given by the medical source, the extent of his explanation, and the consistency with the record as a whole. Although the medical opinion of a treating physician is typically entitled to great weight, the ultimate issue of disability is reserved to the Commissioner. I am not bound to accept a treating physician's conclusion as to disability, particularly when it is not supported by detailed, clinical diagnostic evidence.

> I have given Dr. Crumbliss's opinions little weight because they are not supported by the medical evidence of record. Dr. Crumbliss's own treatment notes fail to reveal the type of significant clinical and laboratory abnormalities one would expect if the claimant were in fact disabled, and the doctor did not specifically address this weakness. From February 2009 through the date last insured, he observed decreased joint tenderness and repeatedly noted that the claimant's joints were doing better with Plaquenil. Dr. Crumbliss's opinions are also without substantial support from the other evidence of record. His opinions are inconsistent with the examination reports of Dr. Taylor and Dr. Brandecker and are inconsistent with the reviewing and examining physicians and with treating physician Dr. Taylor's opinion. *See Newton v. Apfel*, 209 F.3d 448 (5th Cir. 2000); 20 CFR 404.1527(d); and SSRs 96-2p and 96-5p.

(R. 24-25.)

It is well-established that substantial or considerable weight must be given to the opinion, diagnosis and medical evidence of a treating physician unless "good cause" is shown to the contrary.[22]  If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight.[23]

The ALJ may discount a treating physician's opinion or report regarding an inability to  work if it is unsupported by objective medical evidence or is wholly

---

[22] Crawford v. Commissioner of Social Security, 363 F. 3d 1155, 1159 (11th Cir. 2004) (citing Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir.1997)) ("We have found 'good cause' to exist where the doctor's opinion was not bolstered by the evidence, or where the evidence supported a contrary finding. We have also found good cause where the doctors' opinions were conclusory or inconsistent with their medical records."). See also Edwards v. Sullivan, 937 F.2d 580, 583-584 (11th Cir. 1991); Sabo v. Commissioner of Social Security, 955 F. Supp. 1456, 1462 (M.D. Fla.1996); 20 C.F.R. § 404.1527(d).

[23] 20 C.F.R. § 404.1527(d)(2).

conclusory.[24]  Where a treating physician has merely made conclusory statements, the

ALJ may afford them such weight as is supported by clinical or laboratory findings and

other consistent evidence of a claimant's impairments.[25]

Upon a review of the ALJ's decision, as well as an examination of the medical

records at issue, the Court concludes for the following reasons that the ALJ properly

considered and discounted the opinion of Dr. Crumbliss.

A review of the record disclosed that Dr. Crumbliss's opinion is inconsistent with

his own treatment notes.  Plaintiff was placed on Plaquenil for arthritis in February

2009.  (R. 172.)  Dr. Crumbliss's records from April to June of 2009 evidence that

Plaintiff's joint pain was improving, and that her arthritis was under fair control with

medication.  (R. 171.)  Treatment notes from August 14 and August 26, 2009 do not

include any notations regarding Plaintiff's issues with arthritis or joint pain.  In

September 2009, following Plaintiff's MRI, Dr. Crumbliss found that she had "some

symptoms going down her leg," which "seem[] to be worse on the left," but his treatment

notes do not include any further clinical findings.  (R. 352.) Thus, while the medical

records from this period include Plaintiff's self-reported allegations of pain, they do not

include any specific findings as to Plaintiff's functional limitations as a result of her

impairments.

Dr. Crumbliss's opinion is also inconsistent with Plaintiff's statements regarding

---

[24] Edwards, 937 F.2d at 584 (ALJ properly discounted treating physician's report where the physician was unsure of the accuracy of his findings and statements).

[25] Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir.1986); see also Schnorr v. Bowen, 816 F.2d 578, 582 (11th Cir.1987).

her abilities.  At the hearing before the ALJ, Plaintiff testified that she could perform

normal household chores, sometimes with the assistance of her husband and young

son, and that she could drive her son to school each day.  (R. 35.)  On April 2, 2009,

Plaintiff also informed Dr. Crumbliss that her joint pain was doing better with

medication, and that she was able to go to the gym four to five times per week and lift

weights.  (R. 181.)

Finally, Dr. Crumbliss's opinions are inconsistent with the other medical evidence

in the record, including the treatment records of treating physician Dr. Taylor, a

rheumatologist.  While Dr. Taylor's opinion that Plaintiff could perform a "clerical job" is

not entitled to great weight, because it is an opinion as to Plaintiff's disability rather than

her functional limitations arising from her impairments, Dr. Taylor's treatment notes are

specific as to Plaintiff's impairments and functional limitations, or lack thereof.  In

February 2009, in response to Plaintiff's complaint of pain in her right elbow and hips,

Dr. Taylor found the right elbow tender, but otherwise "unremarkable," and found that

Plaintiff had a full range of motion in both hips with some tenderness in the right hip.

(R. 224.)  Dr. Taylor did not believe that Plaintiff had symptoms of inflammatory arthritis.

In June 2009, Dr. Taylor found substantial range of motion in Plaintiff's right hip, and

ordered an x-ray of the hip, which was normal.  (R. 248, 250.)  On August 17, 2009, Dr.

Taylor opined that Plaintiff was "being treated appropriately" for osteoarthritis,

osteoporosis, hypertension, and hyperlipidemia.  Finally, in October 2009, Dr. Taylor

reviewed the MRI of Plaintiff's spine, but found that although Plaintiff had some

weakness in her left hip flexors, she had "little in terms of left-sided symptoms to go

along with her MRI findings." (R. 380.) These clinical findings are detailed and supported by objective evidence, including observations of Plaintiff's joints, x-rays, and the MRI, and are inconsistent with Dr. Crumbliss's opinions of Plaintiff's limitations.

The ALJ's decision to assign little weight to the opinions expressed by Dr. Crumbliss was explained by the ALJ in his decision and is supported by substantial evidence. Accordingly, the Court concludes that the ALJ did not err in discounting the conclusions expressed by Dr. Crumbliss in his letter and the questionnaire.

## B. Plaintiff's Pain Complaints

As part of his credibility finding, the ALJ concluded that Plaintiff's impairments could reasonably be expected to produce some of the alleged symptoms, but that her statements concerning the intensity, persistence, and limiting effects of these symptoms are not credible to the extent they are inconsistent with the ALJ's determination of Plaintiff's residual functional capacity assessment. Plaintiff agues that the ALJ erred in evaluating her complaints, and did not provide sufficient reasons for finding her not credible. Plaintiff also argues that the ALJ did not consider the effects of her pain on her attention and concentration.

In Hand v. Heckler, 761 F.2d 1545, 1549 (11th Cir. 1986), the Eleventh Circuit adopted the following pain standard:

> There must be evidence of an underlying medical condition and (1) there must be objective medical evidence to confirm the severity of the alleged pain arising from the condition or (2) the objectively determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain.

If the Commissioner rejects a claimant's allegations of pain, he must articulate explicit

and adequate reasons, and these reasons must be based on substantial evidence.

Hale v. Bowen, 831 F.2d 1007, 1012 (11th Cir. 1987).  A clearly articulated credibility

finding with substantial supporting evidence in the record should not be disturbed by a

reviewing court.  Foote v. Chater, 67 F.3d 1553, 1562 (11th Cir. 1995); MacGregor v.

Bowen, 786 F.2d 1050, 1054 (11th Cir. 1986).

     In his decision, the ALJ articulated numerous examples supporting his

conclusion that Plaintiff's subjective complaints were not credible.  For example, while

Plaintiff alleged knee pain, her treating physician Dr. Crumbliss found the knees

"unremarkable," and Dr. Brandecker found no abnormalities in her knees.  (R. 267,

395.)  Plaintiff alleged pain in her hands and difficulty in gripping objects, and while

there was evidence that Plaintiff had some osteoarthritis in her hands, Dr. Brandecker's

examination found a full range of motion in both hands.  (R. 395.)  Plaintiff alleged pain

in her right hip, but her treating physician Dr. Taylor and Dr. Brandecker found a full

range of motion in the right hip, and x-rays of the hip were normal.  (R. 247, 249, 395.)

Dr. Taylor examined the MRI of Plaintiff's spine, and found that while she had a disc

protrusion, she had few symptoms on her left side that would correlate with the MRI

findings.  (R. 380.)  Dr. Brandecker also found that Plaintiff had a normal gait, could

walk on her heels and toes, and could squat, tandem gait, and hop.  (R. 395.)

     The ALJ's determination that Plaintiff's subjective complaints were not credible is

further supported by Plaintiff's activities of daily living, which include driving, doing

housework, and caring for herself and her son.  Lastly, and most notably, Plaintiff's

medical records also disclose that she was able to go to the gym four to five times per

week and lift weights. (R. 169.) A plaintiff's daily activities may be considered in assessing pain. Harwell v. Heckler, 735 F.2d 1292, 1293 (11th Cir. 1984).

Plaintiff argues that the ALJ erred in finding that there was no objective evidence of disabling side effects from her medication. Plaintiff points to Dr. Crumbliss's letter to the Social Security agency dated February 27, 2009 stating that Plaintiff's medication "knocks her out," and a note from Dr. Taylor indicating that Plaintiff's prior medication interfered with her calcium absorption. (R. 217, 221.) The ALJ correctly noted, however, that there are no medical records documenting that Plaintiff's medication during the relevant time period "knocks her out." Although the ALJ is required to consider a claimant's subjective accounts of adverse side effects from medicine, these accounts must be adequately documented by medical evidence contained in the record. Swindle v. Sullivan, 914 F. 2d 222 (11th Cir. 1990).

Finally, Plaintiff argues that the ALJ failed to consider the effect of Plaintiff's pain on her concentration. The ALJ noted that Dr. Raulston, the medical expert, testified at the hearing that moderate to severe pain can interfere with concentration. (R. 21, 41.) A review of the medical records discloses, however, that there are no treatment notes or other medical evidence that supports a finding that Plaintiff's pain interfered with her concentration.

In sum, Plaintiff's contention that the ALJ erred in rejecting Plaintiff's subjective complaints regarding her pain is without merit. The ALJ carefully reviewed and relied upon the medical evidence in the record in making his credibility finding and articulated reasons supported by substantial evidence in the record supporting his conclusion that

Plaintiff's subjective complaints were not as limiting as she contended. Accordingly, the

ALJ did not err in rejecting Plaintiff's subjective complaints regarding symptoms and

limitations due to pain.

## C. Hypothetical Posed to the VE

Plaintiff next contends that the ALJ erred in the hypothetical question he posed to

the VE at Plaintiff's administrative hearing, because the ALJ's hypothetical did not

include the limitations suggested by Dr. Crumbliss. Plaintiff also argues that there was a

conflict between the VE's testimony regarding jobs that could be performed with a

sit/stand option, and the Dictionary of Occupational Titles (DOT), which does not state

whether jobs can be performed with such an option. Each of these arguments fail upon

closer examination.

At step four, the claimant bears the burden of demonstrating she cannot return to

her past relevant work.[26] If a claimant's impairments do not prevent her from performing

past relevant work, she is not disabled.[27] While the testimony of a vocational expert is

often relevant at step five - after the burden has shifted to the Commissioner to prove

that there are jobs that exist in significant numbers in the national economy that an

individual with Plaintiff's RFC could perform - there is no requirement for an ALJ to use

VE testimony to determine whether a claimant can perform her past relevant work at

---

[26] Lucas v. Sullivan, 918 F.2d 1567, 1571 (11th Cir. 1990)("The claimant also bears the initial burden of proving that she is unable to perform her previous work.").

[27] 20 C.F.R. § 404.1520(e).

step four.[28]  While the regulations provide that "the services of a vocational expert" *may* be used in making this determination,[29]  vocational expert testimony is not necessary to determine whether a claimant can perform her past relevant work.[30]   Accordingly, the issue in the instant case is not whether the hypothetical posed to the VE was proper – and therefore constitutes substantial evidence as would be the case at step five –  but whether substantial evidence supports the ALJ's finding at step four.  A review of the record as a whole discloses that the ALJ's step four determination is supported by substantial evidence.

At the hearing, the VE testified that Plaintiff's past relevant work was as an accounts receivable clerk (SVP 4), a customer service clerk (SVP 5), and a payroll clerk (SVP 4).  (R. 44.)  The accounts receivable clerk and customer service clerk positions are sedentary, and the payroll clerk has light physical demands.  The former two sedentary positions, which the VE testified could be performed with the freedom to change positions from sitting to standing, are consistent with the ALJ's determination of Plaintiff's RFC.  The ALJ determined that Plaintiff could perform sedentary work, except that she required the freedom to occasionally change positions from sitting to standing.

The ALJ's RFC determination is supported by substantial evidence and is consistent with the medical evidence of record.  As discussed above, the ALJ did not err

---

[28] Hennes v. Comm'r of Soc. Sec. Admin., 130 Fed. Appx. 343, 345-46 (11th Cir. 2005)(quoting 20 C.F.R. § 404.1560(b)(2)); *see also* Walker v. Comm'r of Soc. Sec., No. 6:07-cv-1647-Orl-18KRS, 2008 WL 5100120, at *6 (M.D.Fla. Dec. 2, 2008).

[29] 20 C.F.R. § 416.960(b)(2).

[30] Lucas v. Sullivan, 918 F.2d 1567, 1573 n.2 (11th Cir. 1990)(concluding "because the ALJ concluded that she [claimant] is capable of performing her past relevant work, testimony from a vocational expert was not necessary").

in giving little weight to the opinions of Dr. Crumbliss, who opined that Plaintiff had greater functional limitations than those present in the RFC. The ALJ credited the opinions of treating physician Dr. Taylor, who opined that Plaintiff was being treated appropriately for her conditions and who had examined X-rays of Plaintiff's spine and hip. He also credited the opinion of state agency examining physician Dr. Brandecker, who had found no abnormalities in Plaintiff's knees, right hip, or right shoulder. The ALJ noted that there was evidence that Plaintiff had osteoarthritis in her hands, but explained that the RFC included no functional limitations related to Plaintiff's hands because Dr. Brandecker had found that Plaintiff had a full range of motion in both hands. (R. 23.) The ALJ also explained his reason for not including any limitations in concentration, persistence, and pace in the RFC, noting that the medical records included no evidence of limitations in concentration. (R. 23.) The ALJ concluded that an RFC of "sedentary work with a sit/stand option" would account for Plaintiff's "severe musculoskeletal impairments and her allegations of pain and difficulty sitting, standing, and walking." (R. 25.) There was no error in this analysis.

Further, even though the VE's testimony was not necessary at step four, to the extent that the ALJ relied upon the testimony of the VE Plaintiff has not shown that the ALJ's hypothetical to the VE was improper. Generally, at step five of the sequential analysis when presenting a hypothetical to the VE the ALJ is required to describe Plaintiff's educational level, age, work skills, experience, and all of Plaintiff's impairments.[31] The Social Security Administration's regulations do not obligate an ALJ to

---

[31] <u>Jones v. Apfel</u>, 190 F.3d 1224, 1229 (11th Cir. 1999).

use specific wording when describing Plaintiff's impairments in these hypotheticals so long as the question accurately reflects the claimant's RFC. The question must set out all of the claimant's impairments.[32] In this case, the ALJ presented a hypothetical to the VE that incorporated Plaintiff's age, education, past relevant work, and the RFC that was supported by substantial evidence. Accordingly, there was no error in the hypothetical.

In comparing Plaintiff's RFC with the physical and mental demands of Plaintiff's past relevant work, the ALJ concluded that Plaintiff was capable of performing her past work as an accounts receivable clerk and a customer service clerk as they are generally performed. Therefore, the Court concludes that the ALJ's step four determination is supported by substantial evidence and thus the decision of the Commissioner is due to be affirmed.

Plaintiff also argues that the ALJ erred by relying on testimony from the VE that Plaintiff contends was in conflict with the Dictionary of Occupational Titles ("DOT.") The ALJ's RFC and hypothetical to the VE included the limitation that Plaintiff required work with a sit/stand option. The VE testified that Plaintiff could perform her past relevant work with such a limitation. Plaintiff asserts that because the DOT is silent as to the issue of whether a job can be performed with a sit/stand option, the VE's testimony is in conflict with the DOT. According to Plaintiff, under Social Security Ruling 00-4p, where there is a conflict between the VE's testimony and the DOT, the ALJ must elicit a reasonable explanation for the conflict. Plaintiff argues that the ALJ erred by failing to

---

[32] Wilson v. Barnhart, 284 F3d.1219, 1227 (11th Cir. 2002).

elicit such an explanation. This argument misconstrues the jurisprudence dealing with conflicts between VE testimony and the DOT and suffers from several fundamental flaws.

First, the jurisprudence relating to Social Security Ruling 00-4P is applied in all cases at step five of the sequential analysis – where the burden has shifted to the Commissioner to demonstrate that even though the claimant cannot perform past relevant work there are still jobs in the national economy that the a claimant could perform even with Plaintiff's limitations – and not at step four before the burden has shifted. In this case the issue of the alleged conflict between the testimony of the VE and the DOT is at step four where the ALJ was called upon to determine whether the Plaintiff could perform her past relevant work. At this stage of the sequential analysis the VE's testimony is not required to demonstrate whether substantial evidence supports the ALJ's decision.

Second – and assuming *arguendo* that the step five jurisprudence would be applicable here at step four – cases discussing a conflict between the testimony of the VE and the DOT involve situations in which there is a direct conflict between the testimony of the VE and the DOT. In other words in those cases discussing a conflict the "conflict" generally arises when the VE testifies to a matter that is contradicted by information in the DOT. For example, in Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999) - a step five case - the plaintiff argued "that the ALJ's reliance on the VE's testimony was improper because the exertional and environmental requirements of

some of the jobs identified by the VE, such as hand packager and nut sorter, conflict

with the DOT."  In this case there is no direct conflict but rather the DOT is simply silent

regarding the issue of whether the jobs permit a sit/stand option   Thus, this case does

not present a situation where there is a direct conflict between the testimony of the VE

and the DOT.

Finally, Plaintiff misconstrues the obligation of the ALJ where there is a conflict

between the VE's testimony and the DOT. Plaintiff suggests that where there is a conflict

the ALJ is obligated to elicit a reasonable explanation for the conflict before relying on

the VE's testimony.  This is an incomplete recitation of the law in the Eleventh Circuit.

Prior to the promulgation of SSR 00-4p, the Eleventh Circuit held in <u>Jones</u> that "when

the VE's testimony conflicts with the DOT, the VE's testimony 'trumps' the DOT."[33]  The

Court reasoned that the VE's testimony may be followed because the DOT "is not the

sole source of admissible information concerning jobs" and that by its own wording "the

SSA itself does not consider the DOT dispositive."[34]  Accordingly, under <u>Jones</u>, an ALJ

may rely upon the testimony of the VE without first resolving any conflict with the DOT.[35]

---

[33] <u>Jones</u>, 190 F.3d at 1229-30.

[34] <u>Id.</u>

[35] Plaintiff cites two cases for the proposition that the ALJ must resolve the inconsistency between
the VE's testimony that a plaintiff could perform a particular job with a sit/stand option and the DOT's
silence on the sit/stand issue. The Court in <u>Stott v. Astrue</u>, No. CA 2:08-0579-C, 2009 WL 2998185, (S.D.
Ala. Sept. 11, 2009) - a step five case-cites SSR 00-4p for the proposition that neither the DOT nor the VE
testimony "trumps" where there is a conflict, but does not cite <u>Jones</u>.  In light of the Eleventh Circuit's
reiteration that <u>Jones</u> remains good law following the promulgation of SSR 00-4p, *see* <u>Miller v. Comm'r of
Soc. Sec.</u>, 246 F. App'x 660, 661-62 (11th Cir. 2007), the <u>Stott</u> case is not persuasive.  The other case
cited by Plaintiff, <u>Cunningham v. Astrue</u>, No. CV 09-624-TUC-HCE, 2011 WL 1119646 (D. Ariz. Mar. 28,

Although SSR 00-4p was promulgated after <u>Jones</u> was decided, it does not undo

the <u>Jones</u> rule. Indeed, after the promulgation of SSR 00-4p, the Eleventh Circuit held

in <u>Miller</u> - again, a step five case - that because Social Security rulings do not bind the

courts, even "assuming that an inconsistency existed between the testimony of the

vocational expert and the DOT," an ALJ does not err "when, without first resolving the

alleged conflict, he relie[s] on the testimony of the vocational expert."[36] The Court

reiterated that even after the promulgation of 00-4p, "the testimony of a vocational expert

'trumps' an inconsistent provision of the DOT in this Circuit."[37]

In this case, neither the VE nor the Plaintiff made the ALJ aware of any potential

conflict between the VE's testimony and the DOT.[38] Even assuming a conflict existed,

however, the ALJ was entitled to rely upon the VE's testimony. Accordingly, Plaintiff has

not met her burden of demonstrating that the ALJ's step four determination in this case

was not supported by substantial evidence.

---

2011) relies on the Ninth Circuit rule that neither the DOT nor the VE testimony "trumps" when there is a conflict, and the ALJ thus "must first determine whether a conflict exists," and in the case of a conflict, "must then determine whether the vocational expert's explanation for the conflict is reasonable and whether a basis exists for relying on the expert rather than the [DOT]." <u>Id.</u> at *6 (quoting <u>Massachi v. Astrue</u>, 486 F.3d 1149, 1153 (9th Cir. 2007)). This rule is different from the Eleventh Circuit rule articulated in <u>Jones</u>, and therefore inapplicable here.

[36] <u>Miller</u>, 246 F. App'x at 662. <u>See also</u> <u>Donahue v. Barnhart</u>, 279 F.3d 441, 446 (7th Cir. 2002) (stating that "[w]hen no one questions the vocational expert's foundation or reasoning, an ALJ is entitled to accept the vocational expert's conclusion, even if that conclusion differs from the [DOT]").

[37] <u>Id.</u> (citing <u>Jones</u>, 190 F.3d at 1229-30).

[38] Plaintiff asserts that the ALJ stated in his opinion that the VE's testimony was consistent with the DOT, and that this statement was inaccurate. (R. 26.) As discussed, because the DOT is silent as to a sit/stand option, the VE's testimony was not a direct conflict in the traditional sense. Even assuming, however, that a conflict existed, the ALJ was still entitled to rely upon the VE's testimony because it "trumped" the DOT under Eleventh Circuit caselaw. <u>Miller</u>, 246 F. App'x at 662; <u>Jones</u>, 190 F.3d at 1229.

## D.  New Evidence Presented to the Appeals Council

Plaintiff contends that remand is required for consideration of new evidence which was presented to the Appeals Council.  Plaintiff submitted a report from a consultative examining physician, Dr. Goldman, to the Appeals Council.  Dr. Goldman evaluated Plaintiff on December 17, 2011 and prepared a letter and an attorney-supplied questionnaire.  (R. 577-88.)  Dr. Goldman opined that Plaintiff had failed back syndrome, due in part to issues arising from her back surgery.  He further opined that Plaintiff was restricted in standing, balancing, walking, twisting, lifting, pushing, pulling, and bending.  (R. 587.)  Dr. Goldman stated that his descriptions of Plaintiff's symptoms would apply as far back as July 2008.  (R. 582.)

To justify remand based on new evidence, Plaintiff would have "to show that (1) new, noncumulative evidence exists, (2) the evidence is material such that a reasonable possibility exists that the new evidence would change the administrative result, and (3) good cause exists for the applicant's failure to submit the evidence at the appropriate administrative level."  Falge, 150 F.3d at 1323 (citing Cannon v. Bowen, 858 F.2d 1541 (11th Cir.1988)).  Plaintiff is unable to make this showing.  While Plaintiff asserts that the evidence is new because Dr. Goldman had not examined Plaintiff at the time of the administrative hearing, Dr. Goldman's report is largely cumulative of the opinions of Dr. Crumbliss, Plaintiff's treating physician, which were discussed at length above.  Plaintiff has also failed to show good cause why the evaluation from Dr. Goldman was unavailable at the time of the hearing, or why the evaluation did not take place until more than a year following the hearing and more than two years following Plaintiff's date last insured.  Finally, given that Dr. Goldman's opinions, insofar as they relate to the relevant

time period in this case, are cumulative of Dr. Crumbliss's opinions, Plaintiff has failed to show that there is a reasonable probability that consideration of the report would result in a different outcome.

## V.  RECOMMENDATION

In view of the foregoing, it is respectfully **RECOMMENDED** that the decision of the Commissioner should be **AFFIRMED**.

**IN CHAMBERS** in Gainesville, Florida, on April 17, 2013.

*s/ Gary R. Jones*
GARY R. JONES
United States Magistrate Judge